UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

97 SEP 23 PM 3:36



DIANNE KIRNES,  )
  )
  )
  Plaintiff,  )
  )
vs.  )  Civil Action No. CV-97-S-1198-NE
  )
JOHN GIBSON, individually and  )
in his official capacity as  )
President of Alabama A&M  )   **ENTERED**
University; VONCILE GIBSON,  )
individually; CHRIS MCNAIR,  )
RICHARD DAVIS, ONEIL CULVER,  )   SEP 2 3 1997
JESSE CLEVELAND, EDWIN S.  )
HILL, ROBERT HOLMES, JR.,  )
JERRY CRUTCHER, G.W. PONDER,  )
III, OSCAR TUCKER, SHERRY H.  )
THOMAS, and SHELTON RIGGINS,  )
in their official capacities  )
as members of the Alabama A&M  )
University Board of Trustees,  )
  )
  )
  Defendants.  )
  )

## MEMORANDUM OPINION

This action is before the court on defendants' motions to dismiss plaintiff's complaint. Upon consideration of the motions, pleadings, and plaintiff's responses, this court concludes the motions are due to be denied in part and granted in part.

### I. DISCUSSION

Plaintiff asserts three claims against multiple defendants. Counts I and III assert discrimination and equal protection[1] claims arising under 42 U.S.C. § 1983 against the President of Alabama A&M University, John Gibson, and all members of the Board of Trustees

---

[1] Count III purports to assert an equal protection claim. Plaintiff's deficiencies in pleading the count are addressed in Section IV.C, *infra*.

10

of the University (defendants McNair, Davis, Culver, Cleveland, Hill, Holmes, Crutcher, Ponder, Tucker, Thomas, and Riggins) in their official capacities. The same claims are also asserted against President Gibson in his individual capacity. Count II (advanced only against defendant Voncile Gibson) asserts a state law claim for intentional and malicious interference with a contractual relationship. Defendants move to dismiss Counts I and III on two grounds: they are immune under the Eleventh Amendment to the United States Constitution; and, for failure to state a claim. Defendant Voncile Gibson moves to dismiss Count II for lack of subject matter jurisdiction.

## II. OFFICIAL CAPACITY CLAIMS

### A. Eleventh Amendment Immunity

The Eleventh Amendment bars suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974). Even where the defendant is an entity other than the state, the suit may be barred if the state is the "real party in interest." *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 2514, 138 L. Ed. 2d 1016 (1997). In a suit against a state official in his official capacity for money damages, the entity for which the official is an agent is deemed to be the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 165-67, 105 S. Ct. 3099, 3104-06, 87 L. Ed. 2d 114 (1985). In Alabama, a public college or university, sustained by funds appropriated by the state

2

legislature, is deemed to be an arm of the state and, therefore, is entitled to Eleventh Amendment immunity. *Harden v. Adams*, 760 F.2d 1158 (11th Cir.), *cert. denied sub nom. Grimmer v. Harden*, 474 U.S. 1007, 106 S. Ct. 530, 88 L. Ed. 2d 462 (1985) (citing *Massler v. Troy State University*, 343 So. 2d 1 (Ala. 1977), and *Ellison v. Abbot*, 337 So. 2d 756 (Ala. 1976)). Similarly, the Board of Trustees of a state college or university is entitled to sovereign immunity as an instrumentality of the state. *Harden*, 760 F.2d at 1164 (citing *Hutchinson v. Board of Trustees of University of Alabama*, 256 So. 2d 279 (Ala. Civ. App. 1971)).

There are, however, certain well established exceptions to the Eleventh Amendment bar. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 237-38, 105 S. Ct. 3142, 3145, 87 L. Ed. 2d 171, 177, *reh'g denied*, 473 U.S. 926, 106 S. Ct. 18, 87 L. Ed. 2d 696 (1985). The exception pertinent to this case originates with the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), holding that a suit to enjoin a state official's unconstitutional action is not barred by the Amendment. Based on *Young*, the Supreme Court holds that state officials who violate federal constitutional or statutory law may be sued in federal court for prospective injunctive relief. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984); *see also Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989). Thus, this court retains the power to grant prospective injunctive relief to enjoin continuing violations of federal law by a state or its agent. *Green v. Mansour*, 474 U.S.

3

64, 68, 106 S. Ct. 423, 425, 88 L. Ed. 2d 371, 377. Simply put, official capacity actions for prospective injunctive relief from unconstitutional state actions are not treated as claims against the state for purposes of Eleventh Amendment immunity. *Kentucky v. Graham*, 473 U.S. 159, 163 n.6, 105 S. Ct. 3099, 3104 n.6, 87 L. Ed. 2d 114, 122 n.6 (1985). Moreover, money damages that are ancillary to such prospective relief are not barred by the Eleventh Amendment.[2] *Edelman*, 415 U.S. at 668, 94 S. Ct. at 1358.

Here, plaintiff sued the President of the University, John Gibson, and all members of the Board of Trustees in their official capacities. Although plaintiff contends in brief that President Gibson and the Trustees are sued in their official capacities **only** for purposes of obtaining injunctive relief, the complaint is not so clear. In fact, as to Count I, plaintiff prays for the following relief:

> [A]n Order directing the defendants to reinstate Kirnes to her former position ... and enjoin the defendants from their continued denial of her constitutional rights;
> ... backpay, frontpay, and all other benefits to which Kirnes is entitled, along with pre-judgment and post-judgment interest where applicable;

---

[2] Permissible ancillary relief includes relief which is "the necessary result of compliance with decrees which by their terms were prospective in nature. ... Such an ancillary effect on the state treasury is a permissible and often inevitable consequence of the principle announced in [*Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)]." *Edelman*, 415 U.S. at 668, 94 S. Ct. at 1358. Yet, ancillary costs cannot be "in practical effect indistinguishable ... from an award of damages against the state." *Id*. Such relief does not include relief which is measurable "in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id*. Nor does ancillary relief include that which is deterrent or compensatory in nature, such as damages, costs, and backpay. *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L. Ed. 2d 371 (1985); *Thomas v. DeVries*, 834 F. Supp. 398, 402 (M.D. Ga. 1993), *aff'd*, 36 F.3d 95 (11th Cir. 1995).

4

>            ... such other compensatory and punitive damages to
>       which she may be entitled ...;
>            ... a reasonable attorney's fee and expenses
>       incurred on her behalf ...;
>            ... such other and further relief to which she may
>       be deemed entitled, plus costs of this action.

(Complaint at 5-6, ¶¶ A-E.)  In Count III, the complaint states only that "compensatory and punitive damages as deemed appropriate, plus costs of this action," are sought.  (Complaint at 7, last ¶.)  The complaint simply does not differentiate between the relief sought in plaintiff's official capacity claims from that sought in her individual capacity claim.

Accordingly, to the extent plaintiff seeks retroactive monetary damages from the President and Trustees in their official capacities, the claims are due to be dismissed.  On the other hand, to the extent plaintiff seeks prospective injunctive relief, or its ancillary costs, to halt an ongoing constitutional violation, defendants' motion is due to be denied.

### III.  INDIVIDUAL CAPACITY CLAIM

**A.  Qualified Immunity**

Although the issue of qualified immunity has not been raised by the parties, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991) (citations omitted).  Indeed, discovery is inappropriate if the case can be resolved on the immunity issue.  *Siegert v. Gilley*, 500 U.S. 226, 231-33, 111 S. Ct. 1789, 1793, 114 L. Ed. 2d 277 (1991).

5

Qualified immunity protects governmental actors from civil liability for individual capacity claims in all but exceptional cases. *Lassiter v. Alabama A&M University*, 28 F.3d 1146, 1149 (11th Cir. 1994). Thus, governmental officials performing discretionary functions are protected from liability for official conduct which does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The Eleventh Circuit has elucidated that point as follows:

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law.

*Lassiter*, 28 F.3d at 1149 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)). The focus is "on the actual, on the specific, on the details of concrete cases." *Id.* "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993), *modified*, 14 F.3d 583 (1994)). In *Lassiter*, the Eleventh Circuit also said:

> The essence of qualified immunity is that it is unfair--and, as a matter of public policy, unwise--to impose personal liability on government officers unless the officers had advance notice that what they were doing was unlawful. Pre-existing law must supply this notice; the unlawfulness must be obvious, considering the circumstances confronting the officers.

6

*Id.* at 1152. The Eleventh Circuit, sitting *en banc*, recently reaffirmed this analysis in *Jenkins v. Talladega City Board of Education*, 115 F.3d 821 (11th Cir. 1997), noting that "[i]n this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins*, 115 F.3d at 827 n.4.

Accordingly, this court directs the parties to pursue discovery on the issue of President Gibson's qualified immunity, pursuant to the principles set out above and any relevant precedent. Application of these principles to the present case must await further development of the record.

## IV. MOTIONS TO DISMISS

### A. Counts I & III against Board of Trustees

Defendants move to dismiss Counts I and III against the Board of Trustees for failure to state a claim upon which relief can be granted, because the Trustees have not "taken any action or refused to take any action that resulted in any injury to Plaintiff". (Motion to Dismiss ¶ 2.) A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80, __ (1957). "A complaint may not be dismissed because the plaintiff's claims do not support the legal theory [s]he relies upon since the court must determine if the allegations provide for relief on **any** possible theory." *Brooks*

7

*v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis supplied) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).[3] Hence, dismissal for failure to state a claim is a disfavored remedy which is "rarely granted." *Brooks*, 116 F.3d at 1369 (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1968)).

To state a *prima facie* § 1983 claim grounded on a constitutional violation, a plaintiff must allege that the defendant's conduct caused the constitutional violation, and the challenged conduct was "under color of state law." 42 U.S.C. § 1983. Additionally, where the defendant is a governmental body, plaintiff must allege the challenged conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L. Ed. 2d 611 (1978). *Respondeat superior* liability is not sufficient to impose liability on a governmental body. *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036. Nevertheless, the *Monell* Court stated that official policy may be made by officials "whose acts or edicts may fairly be said to represent official policy." *Id.* at 694, 98 S. Ct. at 2037. Moreover, liability may be imposed on a governmental entity for the acts of a high-ranking official who "possesses final authority to establish ... policy with respect to the action ordered." *Pembaur*

---

[3] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299, 89 L. Ed. 2d 452 (1986).

Plaintiff alleges in Count I that her termination "was accomplished under color of state law, statute, ordinance, regulations, custom or usage," and in Count III that defendants "intentionally discriminated against [her] in terminating her employment." (Complaint ¶¶ 27, 36.) Plaintiff has not alleged that any act taken by the Board caused her alleged constitutional violation. Indeed, the complaint does not assert that the reorganization implemented by President Gibson was undertaken at the direction of, or even the knowledge of, the Board. Nor has plaintiff claimed that the Trustees officially adopted the policy which led to her allegedly illegal termination, or that President Gibson was imbued with final decision-making authority for all such University reorganizations.

Even so, such detail is not required by the Federal Rules of Civil Procedure at this juncture. *See* Fed. R. Civ. P. 8, 10, 12; *see also Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Arnold v. Board of Education of Escambia County, Alabama*, 880 F.2d 305, 309 (11th Cir. 1989). Nor are there heightened pleading requirements for § 1983 claims against government officials or entities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordinating Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Given plaintiff's assertions, and the undeveloped record currently before the court, it is not beyond doubt that plaintiff cannot establish facts which would

9

entitle her to relief against the Trustees under § 1983 for personnel decisions made by President Gibson. This court will not dismiss such a claim without first allowing plaintiff to fully develop the underlying facts. Nevertheless, plaintiff is cautioned that mere acquiescence by the Trustees is not likely to survive the more rigorous standard required to avoid summary judgment on this issue.

### B.  Count II against Voncile Gibson

Plaintiff's sole claim against defendant Voncile Gibson is a state law tort claim alleged in Count II. Jurisdiction over plaintiff's § 1983 claims is proper pursuant to the jurisdictional grant in 28 U.S.C. § 1343(a), but no independent basis for federal jurisdiction exists over Count II. Prior to 1990, the absence of a specific statutory grant of pendent party jurisdiction in 28 U.S.C. § 1343(a) would require this court to dismiss the state law claim. *See Ortega v. Schramm*, 922 F.2d 684, 693 (11th Cir. 1991) (interpreting *Finley v. United States*, 490 U.S. 545, 109 S. Ct. 2003, 104 L. Ed. 2d 593 (1989), to require an analysis of the underlying statute's jurisdictional grant before exercising pendent party jurisdiction). Indeed, this is the authority defendant relies on in her motion to dismiss. This rule, however, was overruled by statute several years ago with the enactment of the Judicial Improvement Act of 1990, 28 U.S.C. § 1367, which states in part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original

10

>jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a) (emphasis supplied). Thus, contrary to the stale contention made by defendant, this court has broadly expanded power to adjudicate pendent state law claims in cases filed after December 1, 1990. The *Ortega* case relied on by defendant explicitly recognizes this change in the law. *See Ortega*, 922 F.2d 684, 693 n.12 (noting the changed rule, but applying *Finley* because the *Ortega* case was filed before the effective date of the Judicial Improvement Act of 1990); *see also McCoy v. Webster*, 47 F.3d 404, 406 (11th Cir. 1995) (noting district court's proper retention of jurisdiction, pursuant to § 1367(a), over state tort claims asserted against sheriff in § 1983 action); *McCray v. Holt*, 777 F. Supp. 945 (S.D. Fla. 1991) (exercising jurisdiction over loss of consortium claim related to underlying § 1983 action). Defendant's contrary view is not supported by the case law, nor are defendant's arguments persuasive at this juncture in the case.

Plaintiff's complaint was filed well after the enactment of § 1367(a). The contractual interference claim is undeniably "so related to [plaintiff's § 1983 claims as to] form part of the same case or controversy under Article III." Defendant's motion is due to be denied.

**C.  Count III against President Gibson and Board of Trustees**

Defendants contend Count III is "vague and confusing" and move to dismiss, or in the alternative, for a more definite statement.

(Motion to Dismiss ¶ 3.) The standard for assessing the sufficiency of a complaint on a Rule 12(b)(6) motion is set out in Section IV.A, *supra*. Given the present state of the record in this case, dismissal of this count would be inappropriate because the court is not convinced that plaintiff can prove no set of facts which would entitle her to relief on Count III.

Nevertheless, the court agrees that Count III needs clarification. Although plaintiff asserts Count III is an equal protection claim, the precise dimensions of the claim remain elusive. Plaintiff's complaint is divided into six sections: Jurisdiction and Venue (¶¶ 1-2), Parties (¶¶ 3-17), Factual Averments (¶¶ 18-24), Count I (¶¶ 25-30), Count II (¶¶ 31-34), Count III (¶¶ 35-37). The first paragraph within each count states that all preceding paragraphs "are adopted and incorporated by reference as if set out fully herein." (Complaint at 5, ¶ 25; at 6, ¶ 31; at 6, ¶ 35.) Thus, <u>all</u> factual averments are claimed to support <u>all</u> of plaintiff's legal claims. Plaintiff has made no effort to distinguish which facts support which claims. This failure renders Count III virtually incomprehensible. As the Eleventh Circuit has noted:

> Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.

*Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 367 (11th Cir. 1996).

12

Accordingly, the demands of notice pleading under the Federal Rules of Civil Procedure are fundamental, though few. The rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e). Moreover, Rule 10(b) states:

> All averments of claim ... shall be made in separate paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth.

These rules work as one to illuminate claims so that opponents can frame a response, and so the court can determine which facts support which claims, whether plaintiff has stated claims upon which relief can be granted, whether judgment on the pleadings is proper, and later, whether there are genuine issues for trial, and what evidence is relevant to prove plaintiff's claims. *See Fikes v. City of Daphne,* 79 F.3d 1079, 1082 (11th Cir. 1996) (citing *T.D.S. v. Shelby Mutual Insurance Co.*, 760 F.2d 1520, 1543 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). For the complaint which falls short of these bare standards, as this one does, the Federal Rules provide a solution:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement....

Fed. R. Civ. P. 12(e).

13

Count III does not provide defendants with fair notice of plaintiff's claim sufficient to prepare a response. Defendants' alternative motion for a more definite statement as to Count III is due to be granted. Plaintiff has ten days to amend the complaint to conform with this court's order and the Federal Rules.

## V. CONCLUSION

For the foregoing reasons, the court concludes the defendants' motions are due to be **DENIED** in part and **GRANTED** in part. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **23rd** day of September, 1997.

_____
United States District Judge

14